Creekridge Capital, LLC, a Minnesota
limited liability company, a/k/a and
d/b/a Smith & Nephew Finance,

       Plaintiff,

          v.

Louisiana Hospital Center, LLC, a
Louisiana limited liability company;
Cardiovascular Hospitals of America, LLC;
North Shore Physicians Alliance, LLC;
Gregory L. Groglio, M.D.; Barry A. Kusnick,
M.D.; Dale A. Presser, M.D.; M. Laughlin G.
Winkler, M.D.; Joseph P. Dileo, M.D.;
Pervez Mussarat, M.D.; Daniel A. Linarello,
M.D.; R. Vincent Kidd, M.D.; S. Tahseen
Rab, M.D.; David E. Gaudin, M.D.; Michael
Pittman, M.D.; Bradley C. Banks, M.D.;
Agustin J. Suarez, M.D.; Jack E. Saux, M.D.;
Jeffrey H. Oppenheimer, M.D.; and Louis
Provenza, M.D.,

       Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-4434 ADM/SRN

---

George E. Warner, Jr., Esq., and Scott A. Lifson, Esq., Bernick, Lifson, Greenstein, Greene, & Liszt, PA, Minneapolis, MN, on behalf of Plaintiff.

John R. K. Darda, Esq., and R. Christopher Sur, Esq., Maslon, Edelman, Borman & Brand, LLP, Minneapolis, MN, on behalf of Defendant Cardiovascular Hospitals of America, LLC.

Andrea E. Reisbord, Esq., Peter G. Van Bergen, Esq., and Robyn K. Johnson, Esq., Cousineau McGuire Chartered, Minneapolis, MN, on behalf of Defendants North Shore Physicians Alliance, LLC, Gregory L. Groglio, M.D., Michael Pittman, M.D., Jeffrey H. Oppenheimer, M.D., and Louis Provenza, M.D.

Adam A. Gillette, Esq., and Douglas L. Elsass, Esq., Fruth, Jamison & Elsass, PLLC, Minneapolis, MN, on behalf of Defendants Barry A. Kusnick, M.D., Dale A. Presser, M.D., Agustin J. Suarez, M.D., and Jack E. Saux, M.D.

Kevin R. Coan, Esq., and Jacqueline J. Williams, Esq., Barnes & Thornburg, LLP, Minneapolis, MN, on behalf of Defendants M. Laughlin G. Winkler, M.D., Joseph P. Dileo, M.D., Pervez

Mussarat, M.D., Daniel A. Linarello, M.D., R. Vincent Kidd, M.D., S. Tahseen Rab, M.D., and David E. Gaudin, M.D.

_____

## I. INTRODUCTION

On July 31, 2009, the undersigned United States District Judge heard oral argument on

Plaintiff Creekridge Capital, LLC's ("Creekridge") Motion for Summary Judgment [Docket No.

50] and Barry A. Kusnick, M.D. ("Dr. Kusnick"), Dale A. Presser, M.D. ("Dr. Presser"), Agustin

J. Suarez, M.D. ("Dr. Suarez"), and Jack E. Saux, M.D.'s ("Dr. Saux") Motion to Transfer

[Docket No. 57].[1]  For the reasons stated herein, the Motion to Transfer is granted and

Creekridge's Motion is denied.

## II. BACKGROUND

Creekridge is a Minnesota company that leases medical equipment.  Loeffel Aff. [Docket

No. 66] ¶ 2.  Defendants Louisiana Hospital Center, LLC ("LHC") and North Shore Physicians

Alliance, LLC ("North Shore") are Louisiana companies, and Defendant Cardiovascular

Hospitals of America, LLC ("Cardiovascular Hospitals") is a Kansas company.  Notice of

Removal [Docket No. 1], Attach. 1 (Am. Compl.) ¶¶ 2-3.  Cardiovascular Hospitals owns a 59%

interest in LHC and North Shore owns the other 41%.  Darda Aff. [Docket No. 68], Ex. 1

(Phillips Decl.) ¶¶ 2-3.

_____

[1] Defendants Michael Pittman, M.D. ("Dr. Pittman"), Jeffrey H. Oppenheimer, M.D. ("Dr. Oppenheimer"), and Louis Provenza, M.D. ("Dr. Provenza") filed a Joinder [Docket No. 61] in the Motion to Transfer, as did Defendants M. Laughlin G. Winkler, M.D. ("Dr. Winkler"), Joseph P. Dileo, M.D. ("Dr. Dileo"), Pervez Mussarat, M.D. ("Dr. Mussarat"), Daniel A. Linarello, M.D. ("Dr. Linarello"), R. Vincent Kidd, M.D. ("Dr. Kidd"), S. Tahseen Rab, M.D. ("Dr. Rab"), David E. Gaudin, M.D. ("Dr. Gaudin") [Docket No. 64], and Defendant Cardiovascular Hospitals of America, LLC ("Cardiovascular Hospitals"), see Def.'s Mem. in Opp'n to Mot. for Summ. J. [Docket No. 67] at 1.  Counsel informed the Court that Defendant Bradley C. Banks, M.D.,  is deceased.

The relationship between Creekridge and Defendants arose out of a project to construct and operate a hospital facility in Hammond, Lousiana. Pl.'s Mem. in Supp. of Mot. for Summ. J. [Docket No. 52] at 1; Defs.' Joint Mem. in Opp'n to Mot. for Summ. J. [Docket No. 72] at 2. LHC, North Shore, and Cardiovascular Hospitals (collectively "the Corporate Defendants") entered into an agreement with Creekridge to lease medical equipment. Loeffel Aff., Ex. 1 (Fixed Cost Equipment Agreement). The Corporate Defendants are co-lessees under the lease agreement, and, consequently, "each is fully obligated for all obligations under [the lease]." Id., Ex. 1 § 16. The individual doctors named as defendants ("the Doctor Defendants") all entered into agreements with Creekridge personally guaranteeing the Corporate Defendants' performance under the lease up to 50% of the initial cost of the leased medical equipment. Am. Compl. ¶ 24.

Unexpected costs and delays arose during the construction of the hospital facility, and, in October 2007, the construction project defaulted on its loan from GE Commercial Finance Business Property Corporation, the primary source of financing for the project. Phillips Decl. ¶ 4. In April 2008, Creekridge notified Defendants that they were in default on the lease agreement for failing to make the monthly payments of $31,867, and Creekridge demanded that Defendants cure the default by paying all outstanding amounts due under the lease. Loeffel Aff. ¶¶ 15-16. Creekridge then filed this action in Minnesota state court on May 22, 2008, claiming that Defendants have failed to cure the default. Defendants removed the matter to this Court in July 2008.

## III. DISCUSSION

**A.      Motion to Transfer**

Defendants move to transfer this action to the Eastern District of Louisiana.  They argue

that transfer is appropriate under 28 U.S.C. § 1404(a), the general transfer provision, which

provides: "For the convenience of the parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have been

brought."  In analyzing a motion to transfer under § 1404(a), a district court employs a three-

factor balancing test that considers "(1) the convenience of the parties, (2) the convenience of the

witnesses, and (3) the interests of justice."  Terra Int'l Inc. v. Miss. Chem. Corp., 119 F.3d 688,

691 (8th Cir. 1997).  These factors are not exclusive, and a district court's decision on a motion

to transfer "require[s] a case-by-case evaluation of the particular circumstances at hand and a

consideration of all relevant factors."  Id.

Defendants argue that transfer also is warranted under 28 U.S.C. § 1412, a transfer

provision specific to bankruptcy cases, which provides that "[a] district court may transfer a case

or proceeding under title 11 to a district court for another district, in the interest of justice or for

the convenience of the parties."  On May 7, 2009, LHC was put into involuntary bankruptcy in

the Eastern District of Louisiana.  Darda Aff., Exs. 3, 5.  Under 28 U.S.C. § 1334(b), district

courts have subject matter jurisdiction of "all civil proceedings arising under title 11, or arising

in or *related to* cases arising under title 11."  (Emphasis added.)  Defendants contend that this

action is "related to" the LHC bankruptcy proceeding and, thus, it constitutes a "case or

proceeding under title 11" and, pursuant to § 1412, should be transferred to the Eastern District

of Louisiana so that it can be referred to the bankruptcy court.

## 1.      Related-to Jurisdiction and § 1412

In Quick v. Viziqor Solutions, Inc., the court found that the applicability of § 1412 to a

motion to transfer depends on whether the action sought to be transferred is "related to" a

bankruptcy proceeding.  No. 4:06CV637SNL, 2007 WL 494924, at *2 (E.D. Mo. Feb. 12, 2007).

The court explained:

> For subject matter jurisdiction to exist in a related to action, there
> must be some nexus between the civil proceeding and the Title 11
> case.  In order for courts to assert jurisdiction over a proceeding
> related to a bankruptcy case, the proceeding must have some effect
> on the administration of the debtor's estate.

Id. (quotations omitted).  The Eighth Circuit Court of Appeals has adopted the "conceivable

effect" test for determining whether an action is related to a bankruptcy case.  In re Farmland

Indus., Inc., 567 F.3d 1010, 1019 (8th Cir. 2009).  Under that test, the determinative question is

whether the outcome of the action sought to be transferred "could conceivably have any effect on

the estate being administered in the bankruptcy."  Id.  Thus, "[a]n action is related to bankruptcy

if the outcome could alter the debtor's rights, liabilities, options, or freedom of action  . . . and

which in any way impacts upon the handling and administration of the bankrupt estate."

Id.

Although Creekridge opposes transfer, it does not dispute that this action is related to the

LHC bankruptcy case.[2]  The Court is persuaded that if Creekridge were to prevail on its claims

---

[2] Creekridge's brief includes a heading that reads: "Transfer is inappropriate under 28
U.S.C. § 1412 because this case is not 'related to' the LHC bankruptcy action."  See Pl.'s Mem.
in Opp'n to Mot. to Transfer [Docket No. 78] at 19.  Despite this heading, Creekridge fails to
articulate an argument explaining the contention.  To the contrary, Creekridge later seems to
acknowledge that this action is related to the LHC bankruptcy action.  See id. at 23.  The Court
recognizes, however, that "a party cannot concede 'related-to' jurisdiction by agreeing that the
'conceivable effect' test has been met," and that the Court is obliged to make the determination
regardless of any acknowledgments or concessions on related-to jurisdiction.  See In re
Farmland, 567 F.3d at 1019-20.

and secure a judgment with respect to North Shore, Cardiovascular Hospitals, and the Doctor Defendants (collectively "the non-Bankrupt Defendants"), the LHC bankruptcy estate could conceivably be impacted in the sense that the non-Bankrupt Defendants would likely assert indemnification claims against LHC's bankruptcy estate.  See In re Dow Corning Corp., 86 F.3d 482, 488, 490-94 (6th Cir. 1996) (holding that claims against nondebtor defendants were "related to" a debtor defendant's bankruptcy proceeding, in part, because of the nondebtor defendants' potential indemnification claims against the debtor defendant), cited with approval in In re Farmland, 567 F.3d at 1020-21.  Because the claims against the non-Bankrupt Defendants meet the "conceivable effect" test, the Court concludes they are related to the LHC bankruptcy proceeding.

There is a split in authority regarding whether a motion to transfer an action that is "related to" a bankruptcy action in another forum should be analyzed under § 1404 rather than § 1412.  The courts in Dunlap v. Friedman's, Inc., 331 B.R. 674, 677 (S.D. W. Va. 2004), and City of Liberal v. Trailmobile Corp., 316 B.R. 358, 362 (D. Kan. 2004), provided extensive lists of the courts that have come down on either side of the issue and noted that there is even disagreement as to which position represents the majority viewpoint.  Ultimately, the courts in Dunlap and Trailmobile both concluded that the better-reasoned position is that § 1412 should govern.  See Dunlap, 331 B.R. at 680; Trailmobile, 316 B.R. at 362 n.2.  Several courts that have addressed the issue since Dunlap and Trailmobile were decided have agreed that a motion to transfer an action that is related to a bankruptcy proceeding in another forum is properly analyzed under § 1412.  See Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C., No. C-06-04693, 2008 WL 425638, at *1 (N.D. Cal. Feb. 14, 2008); Quick, 2007 WL 494924, at *3; Marquette Transp. Co. v. Trinity Marine Prods., Inc., Civil Action Nos. 06-0826, 06-827, 06-1281, 06-1282, 2006 WL 2349461, at *3-4 (E.D. La. Aug. 11, 2006); Baker v. Muscletech

Research & Dev., Inc., No. 06-C-492, 2006 WL 1663748, at *1-2 (E.D. Wis. June 9, 2006).

This Court adopts the analysis in Dunlap, which thoroughly explains the well-grounded reasons

supporting the conclusion that a motion to transfer an action related to a bankruptcy proceeding

in another forum is appropriately analyzed under § 1412.[3] See 331 B.R. at 677-80.

Creekridge argues § 1412 should be construed as permitting transfer only of bankruptcy

cases and civil proceedings over which federal district courts have both original and exclusive

jurisdiction. Creekridge asserts a distinction exists between, on the one hand, "cases under title

11," over which federal district courts have original *and exclusive* jurisdiction, and, on the other

hand, cases "arising under title 11, or arising in or related to cases under title 11," over which

federal district courts have original *but nonexclusive* jurisdiction. See 28 U.S.C. § 1334(a), (b).

Creekridge contends that the reference in § 1412 to "a case or proceeding under title 11"

expresses Congress's clear intent to limit transfer under § 1412 to only those cases over which

the federal district courts have exclusive jurisdiction. No court that has adopted such an

interpretation. Quite the contrary: the court in In re Bruno's, Inc., 227 B.R. 311, 321-23 (N.D.

Ala. 1998), rejected essentially the same proposed interpretation of the type of cases that are

transferable under § 1412 and found that an action for fraud, tortious interference with business

relations, and breach of contract was "related to" a bankruptcy case and that a motion to transfer

such an action was appropriately analyzed under § 1412. See also Quick, 2007 WL 494924, at

─────────────────

[3] As the parties recognize, the relevant factors that are considered in analyzing transfer
under § 1412 are substantially the same as the factors considered in analyzing transfer under §
1404. See Pl.'s Mem. in Opp'n to Mot. to Transfer [Docket No. 78] at 4; Defs.' Mem. in Supp.
of Mot. to Transfer [Docket No. 58]. Thus, the ultimate determination of whether transfer is
warranted likely would be no different regardless of whether the motion is analyzed under §
1412 or § 1404. See Trailmobile, 316 B.R. at 362 (stating that transfer was appropriate under
either statute and that the only difference between the two statutes "is the additional requirement
under § 1404(a) that an action may be transferred to any place where venue could have been
valid originally"). Here, there is no indication that venue would have been invalid had this
action been originally filed in the Eastern District of Louisiana.

*2-3 (concluding that § 1412 governed a motion to transfer an action that was "related to" a bankruptcy case).

### 2. Transfer Factors

Similar to a transfer under § 1404, a transfer under § 1412 requires a sufficient showing that granting the transfer *either* will be in the interest of justice *or* for the convenience of the parties. See In re Bruno's, 227 B.R. at 323-24 (emphasizing that because § 1412 is phrased in the disjunctive, transfer is appropriate if either criterion is satisfied). The party moving for a transfer has the burden to show by a preponderance of the evidence that transfer is warranted. Quick, 2007 WL 494924, at *3. Deciding whether transfer under § 1412 is warranted requires a case specific analysis that is subject to broad discretion of the district court. In re Bruno's, 227 B.R. at 324

In deciding whether transfer of a "related-to action" under § 1412 would be in the interest of justice, courts consider factors such as (1) the economical and efficient administration of the bankruptcy estate, (2) the presumption in favor of the forum where the bankruptcy case is pending, (3) judicial efficiency; (4) the ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders by those familiar with its laws, (6) the enforceability of any judgment rendered, and (7) the plaintiff's original choice of forum. See id. at 324-25, nn. 45-51 (citing cases). Other factors courts have identified in evaluating the interest of justice include the proximity of creditors to the court, the proximity of the debtor to the court, the proximity of the witnesses necessary to the administration of the estate, and the location of the assets. Dunlap, 331 B.R. at 680-81. Among the factors that courts often consider in evaluating whether transfer would be in the convenience of the parties are (1) the location of the plaintiff and the defendant, (2) ease of access to necessary proof, (3) convenience of witnesses, (4) availability of subpoena power for unwilling witnesses, and (5) expenses related to obtaining

witnesses.  Id. at 325, nn. 52-56 (citing cases).

As an initial matter, Defendants are precluded from arguing the convenience of the

parties as a ground for transfer.  The lease agreement and the guaranty agreements include

clauses designating Minnesota as the governing law and the appropriate jurisdiction and venue.

See Fixed Cost Equipment Agreement §16; Loeffel Aff., Ex. 2 (Guaranty Agreement) § 13.  In

Independent Stationers, Inc. v. Vaughn, the court noted that there is an absence of caselaw

"discuss[ing] the effect of a forum selection clause on a motion to transfer venue under 28

U.S.C. § 1412."  No. IP 99-0127, 2000 WL 1449854, at *7 (S.D. Ind. Jan. 3, 2000).  In the

context of transfer motions under § 1404(a), however, "[t]he prevailing view is that '[d]espite the

existence of a valid forum-selection clause, courts may still transfer a case under § 1404(a).'"

Id. (quoting Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir. 1989))

(second alteration in original).  Accordingly, although "a party seeking to transfer venue under §

1404(a) may not use the convenience of the parties in its argument for transfer[,] . . . a court may

still weigh the other factors."  Id. at *7; accord RK Dixon Co. v. Dealer Mktg. Servs., Inc., 284

F. Supp. 2d 1204, 1216 n.17 (S.D. Iowa 2003) ("[A] valid forum-selection clause may waive a

party's right to assert his own convenience as a reason to transfer a case, but district courts still

must consider whether the interest[s] of justice or the convenience of witnesses require

transferring a case.") (quotations omitted) (second alteration in original); Midwest Mech.

Contractors, Inc. v. Tampa Constructors, Inc., 659 F. Supp. 526, 532 (W.D. Mo. 1987) ("By a

valid forum selection clause the parties have only waived any objection . . . to the selected

forum.  [Their agreement] cannot foreclose consideration of other § 1404(a) factors which

implicate public or third-party interests.  Thus, the convenience of the witnesses and the interests

of justice must still be considered.")  The Vaughn court found the reasoning equally applicable

in the context of a motion to transfer under § 1412 and thus concluded that "a valid forum

9

selection cause should only foreclose a litigant from arguing that a proceeding should be transferred under § 1412 for the convenience of the parties." Id. at *8.

The Court agrees with the reasoning in Vaughn and concludes that the clauses in the lease agreement and the guaranty agreements designating Minnesota as an appropriate venue restrict Defendants from arguing for transfer based on the convenience of the parties. Accordingly, Defendants' transfer motion will be analyzed by considering the interest of justice and the convenience of the witnesses.

In evaluating the interest of justice factors, several courts have found the most important factor is whether transfer would promote the economic and efficient administration of the bankruptcy estate. See In re Bruno's, 227 B.R. at 324, nn.44, 45 (citing cases); Dunlap, 331 B.R. at 680-81 (quoting 1 Howard J. Steinberg, Bankruptcy Litigation §§ 2:4, 2:6 (2005)). Creekridge's claims against Cardiovascular Hospitals, North Shore, and the Doctor Defendants are closely intertwined with its claims against LHC, which have now been stayed by application of the automatic stay provision. Simply carving LHC out of the case temporarily to comply with the automatic stay, as Creekridge has done by asserting that its Motion for Summary Judgment does not seek any determination regarding LHC, does not prevent LHC from being affected by the litigation of Creekridge's claims against the non-Bankrupt Defendants. As previously discussed, if Creekridge were to obtain a judgment on its claims, the non-Bankrupt Defendants would presumably assert claims for contribution or indemnification against LHC. Economic and efficient administration of LHC's bankruptcy estate would be advanced (as would the general concern for judicial efficiency) by resolving all of the claims in a single forum.

Many of the other factors fail to inform the analysis one way or the other. While the presumption in favor of the forum where the bankruptcy case is pending (Louisiana) weighs in favor of transfer, that factor is largely offset by the deference generally accorded to the plaintiff's

original choice of forum (Minnesota). Both Minnesota and Louisiana have an interest in

deciding this litigation in the sense that, from Minnesota's perspective, the suit involves a

Minnesota plaintiff and contracts governed by Minnesota law, whereas, from Louisiana's

perspective, the suit involves numerous Louisiana defendants and a hospital construction project

in Louisiana. Thus, the factor requiring consideration of the state's interest in having local

controversies decided within its borders by those familiar with its laws is essentially neutral.[4] In

addition, the parties do not claim that litigating this action in Minnesota or Louisiana would

present any issues regarding the enforceability of judgments.[5]

In sum, while many of the factors fail to inform the analysis under § 1412, the Court

finds that Defendants have sustained their burden of showing by a preponderance of the evidence

that the interests of justice warrant transfer to the Eastern District of Louisiana. Transfer will

promote judicial efficiency and the efficient administration of the bankruptcy estate.[6] In light of

this decision, the Court declines to rule on Creekridge's Motion for Summary Judgment.

## IV. CONCLUSION

---

[4] While the lease agreement and the guaranty agreements provide that they are to be governed by Minnesota law, that fact does not significantly impact the analysis. In the context of a motion to transfer under § 1404(a), the general view is that "courts can just as easily apply the law of another state as easily as their own." Clergy Fin., LLC v. Clergy Fin. Servs., Inc., 598 F. Supp. 2d 989, 995 (D. Minn. 2009) (quotation omitted).

[5] The additional "proximity" factors that some courts employ in evaluating a motion to transfer under § 1412, see Dunlap, 331 B.R. at 680-81, weigh slightly in favor of transfer. LHC and the witnesses necessary to the administration of the bankruptcy estate are located in Louisiana, and the assets subject to the bankruptcy estate, which includes the medical equipment that is the subject of the lease agreement, also are located in Louisiana.

[6] Creekridge also argues, in the context of its analysis regarding transfer under § 1404(a), that the Motion to Transfer should be denied on the ground of excessive delay. Pl.'s Mem. in Opp'n to Mot. to Transfer at 13-15. While its true that this action has been pending for more than a year, the motivation to seek transfer under § 1412 did not arise LHC was put into involuntary bankruptcy on May 7, 2009. Thereafter, Defendants promptly scheduled a hearing date and filed the Motion to Transfer. Darda Aff., Ex. 5.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. The Motion to Transfer [Docket No. 57] is **GRANTED**;

2. Venue shall be transferred to the United States District Court for the Eastern

   District of Louisiana; and

3. Plaintiff Creekridge Capital, LLC's Motion for Summary Judgment [Docket No.

   50] is **DENIED**.

BY THE COURT:

      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 20, 2009.