# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CREEKRIDGE CAPITAL, LLC, a Minnesota Limited Liability Company, a/k/a and d/b/a SMITH & NEPHEW FINANCE** | **CIVIL ACTION** |
| | **No. 09-5861** |
| | **SECTION I/1** |
| **VERSUS** | |
| **LOUISIANA HOSPITAL CENTER, LLC, ET AL** | |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by plaintiff, Creekridge Capital, LLC ("Creekridge").[1] Defendants oppose the motion. For the following reasons, the motion is **DENIED**.

## *BACKGROUND*

On June 5, 2008, Creekridge filed a lawsuit in Minnesota state court.[2] Creekridge alleges that on March 30, 2006, Creekridge entered into a lease agreement with Louisiana Hospital Center, LLC ("LHC"), Cardiovascular Hospitals of America, LLC ("CHA"), and North Shore Physician Alliance, LLC ("North Shore")(collectively referred to herein as the "corporate defendants").[3] Creekridge further alleges that, in connection with the lease agreement, the individual defendants entered into personal guaranty agreements with Creekridge to guarantee the performance of the corporate defendants up to a principal amount "equal to 50% of the initial

---

[1] R. Doc. No. 88.
[2] R. Doc. No. 1.
[3] R. Doc. No. 1, p. 5.

cost of each item of Equipment then subject to the [lease agreement], plus all attorneys' fees, collection costs and enforcement expenses referable thereto."[4]

According to Creekridge, defendants defaulted on the lease agreement and the personal guaranty agreements.[5] Creekridge alleges that it notified defendants of their default and made a demand for the sums owed on April 30, 2008. Creekridge subsequently filed this lawsuit and it was removed to federal court in the District of Minnesota on July 30, 2008.[6] On August 20, 2009, the case was transferred to this district because it is related to LHC's bankruptcy proceedings now pending in this district.[7]

### STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

---

[4] R. Doc. No. 1, p. 5.
[5] R. Doc. No. 1, p. 6.
[6] R. Doc. No. 1.
[7] R. Doc. No. 83.

(1986).  The non-moving party must carry this burden as to each essential element on which it bears the burden of proof.  *Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## *DISCUSSION*

No party disputes the validity of the lease agreement or guaranty agreements. Additionally, no party disputes that such agreements are in default.  The only dispute, therefore, concerns the amount owed under the agreements.

The lease agreement provides:

> Should any default occur and be continuing, Provider may . . . pursue and enforce successively and/or concurrently, any one or more of the following remedies:
> (a)  Without retaking the Equipment[8]
> >  (1)  recover from the User all accrued and unpaid Charges and other amounts then due and owing under the terms hereof,
> . . .

---

[8] The parties initially disputed whether Creekridge was seeking both to accelerate the rent payments and retake possession of the equipment.  *See* R. Doc. No. 105, p. 3.  Creekridge has since made clear that it is seeking only monetary remedies under the lease agreement.  R. Doc. No. 111, p. 2.

(3)    accelerate and cause to become immediately due and payable all Charges and other amounts due and/or likely to be come [sic] due hereunder and recover from User the then worth to Provider of such amounts.[9]

The Court cannot grant Creekridge's motion for summary judgment because there is a genuine issue of material fact with respect to the amount of money owed by defendants to Creekridge. Although Creekridge's evidence is largely unrebutted, the internal inconsistencies and apparent computational errors contained within such documents make it impossible for the Court to determine the amount owed under the lease agreement.

One example of such internal inconsistencies is clear from Creekridge's calculations for the "interim rent" owed for the period of September, 2006, through April, 2008. According to the third affidavit of Creekridge's vice president of collections, Scott Loeffel, Exhibit 7[10] is a chart of the interim rent due for each month from September, 2006 through April, 2008.[11] That exhibit provides that the interim rent for each month varies from \$25,780.61 to \$27,558.58. However, the third Loeffel affidavit states that the interim rent is calculated on the basis of "Schedule No. 001" in the following manner: "the monthly charge for the cost of the equipment (\$31,867.00) was multiplied by the number of days in that particular month. The resulting sum was then multiplied by the Monthly Rate Factor of .020644 to obtain the Interim Rent."[12] Performing such a calculation results in a product of \$19,735.87 for months with 30 days and \$20,393.73 for months with 31 days. Neither product appears anywhere on Exhibit 7.

---

[9] R. Doc. No. 88-4, p. 3.

[10] R. Doc. No. 88-9, p. 2.

[11] R. Doc. No. 111-1, p. 3.

[12] R. Doc. No. 111-1, p. 4. The Court also notes that such a formula differs from the formula provided in Exhibit 3—a document that, according to the Loeffel affidavits, provides the basis for calculating the rent. Exhibit 3 provides that the monthly charge is calculated by multiplying the projected equipment cost by the monthly rate factor. *See* R. Doc. No. 88-6, p. 2.

A similar problem occurs in paragraphs 14-15 of the third Loeffel affidavit. Those paragraphs describe the calculation of monthly charges from May 1, 2008, through September 30, 2009. The affidavit states that the calculation of the monthly charge does not include a piece of equipment valued at $100,225.20 because Creekridge received a full refund of that payment in April, 2009. Earlier in the affidavit, however, Creekridge included the $100,225.20 figure in the computation of the interim rent because Creekridge had not yet received a refund of that amount.[13] Creekridge failed to explain for why such a figure would not be included in the monthly charges from May, 2008, through April, 2009—the date the refund was allegedly received—but would be included from September, 2006 through April, 2008. Additionally, the Court notes that, according to Creekridge's calculations, a reduction of $100,225.20—a little less than 8% of the total equipment cost—would result in a 22% reduction in the monthly rent.[14] Creekridge has provided no explanation for this apparent discrepancy.

Because of the internal inconsistencies in the documents provided by Creekridge, the Court finds that there is a genuine issue of material fact with respect to the amount owed under the lease agreement. Accordingly, summary judgment is inappropriate at this time.[15]

---

[13] R. Doc. No. 111-1, para. 13.

[14] *See* R. Doc. No. 111-1, para. 14 ("The computation does not include the $100,225.20 paid to Smith & Nephew because Creekridge received a refund of that payment in April, 2009, Accordingly [sic], the Monthly Charges were reduced from $31,867.00 to $24,856.").

[15] Because the individual defendants' liability is based on the amount owed by the corporate defendants, the uncertainty in the amount owed by the corporate defendants also precludes summary judgment against the individual defendants.

## *CONCLUSION*

For the reasons stated above,

**IT IS ORDERED** that the motion for partial summary judgment is **DENIED**.

New Orleans, Louisiana, June 23, 2010.

           **LANCE M. AFRICK**
     **UNITED STATES DISTRICT JUDGE**